1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

[Additional counsel listed on signature page]

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ERGATTA, INC., <br><br> Defendant. | Case No. **'23 CV 0983 LL   AHG** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

## CLASS ACTION COMPLAINT

Plaintiff Julie Jones ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Ergatta, Inc., ("Defendant") as the owner and operator of Ergatta.com (the "Website") for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630–638 and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiff's claims arise from Defendant's secret integration of third parties' software to secretly wiretap and eavesdrop on the private conversations of users of the chat features on the Website in real time and Defendant's practice of allowing Third Parties to do so in order to harvest data for financial gain. Defendant did not obtain visitors' consent to either the wiretapping or sharing of their private conversations. As a result, Defendant and the third parties have violated the CIPA in numerous ways.  Plaintiff brings these claims based upon personal knowledge, where applicable, information and belief, and the investigation of counsel, which included, among other things, consultations with experts in the field of data privacy.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

2.      Pursuant to 28 U.S.C. Section 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District, including but not limited to Plaintiff's use of the Website and the illegal wiretapping of Plaintiff's communications.

3.      Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California and it does business with California residents.

## **PARTIES**

4.    Plaintiff Julie Jones is a resident and citizen of California.

5.    Defendant Ergatta, Inc., or Defendant is a multinational corporation headquartered in New York, that does business in California, and owns, operates, and/or controls the Website Ergatta.com.

## **STATEMENT OF FACTS**

6.    The California Invasion of Privacy Act ("CIPA") prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.

7.    The CIPA provides that it is a violation of Cal. Penal Code § 631(a) for any person "by means of any machine, instrument, contrivance, or in any other matter," to do any of the following:

Intentionally tap[], or make[] any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[] or attempt[] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

or

Use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

or

Aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section.

8. Section 631(a) is not limited to phone lines. *See Matera v. Google Inc*., No. 15-CV-04062-LHK, 2016 WL 8200619, at *21(N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., No. C 06-05289-WHA, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

9. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors if their conversations are being recorded or if third parties are eavesdropping on them. "CIPA compliance is not difficult. A business must take certain steps… with a chat feature… to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA."[1]

10. Unlike most companies, Defendant ignores CIPA. Instead, Defendant allows Third Parties to wiretap and eavesdrop on the chat conversations of all its website visitors. Why? Because, as one industry expert notes, "Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . .When people are chatting, you have direct access to their exact pain points."[2]

11. Defendant's actions are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the

---

[1] *See* www. leechtishman.com/insights/blog (last accessed February 2023).

[2] *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last accessed February 2023).

*Jones v. Ergatta, Inc.*
CLASS ACTION COMPLAINT

contrary, as noted above, Defendant's actions are contrary to industry norms and the legitimate expectations of consumers.

12.     To enable the wiretapping, Defendant has covertly embedded a third-party's code into its chat feature that automatically records and creates transcripts of all such conversations.  To enable the eavesdropping, Defendant allows at least one independent Third Party (on information and belief, "Zendesk" f/k/a "Smooch.io") to secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use for that Third-Party's own purposes transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal.

13.     Chat communications on the Website are intercepted by Zendesk while those communications are in transit, and this is accomplished because the imbedded code directs those communications to be routed directly to Zendesk. Zendesk's chat service is an Application Programming Interface (API) that is "plugged into" the Website. The chat function is run from Zendesk's servers but allows for chat functionality on the Website. In other words, Zendesk runs the chat service from its own servers, but consumers interact with the chat service on Defendant's Website, so it appears they are *only* communicating with a company representative of Defendant.

14.     Thus, whenever a chat message is sent from a member of the Class to Defendant, it is first routed through Zendesk's server. This enables Zendesk to analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications *as they occur*, among other services.

15.     Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.  By contrast, Zendesk boasts that it harvests data from the chat transcripts it intercepts, eavesdrops upon, interprets, analyzes, stores, and uses for a variety of its own purposes—all without Plaintiff's or class members' consent—saying, "Every message sent or received through Sunshine Conversations

*Jones v. Ergatta, Inc.*
CLASS ACTION COMPLAINT

is available via the List Messages API in the conversation object as long as they haven't been deleted from the system."[3]

16.    With respect to the data that Zendesk collects and attaches to a visitor's profile and conversation history, Zendesk claims that "Each of Sunshine Conversations' web and mobile SDKs (iOS, Android, and Web) support attaching properties to a user at runtime. The details of when and how these properties are uploaded to the server is handled automatically by the SDKs[.]"[4]

17.    The data that Zendesk analyzes in concert with data from the intercepted conversation includes the visitor's name, email address, how many purchases the visitor has made, how many items are in the visitor's cart, when the visitor first became a customer, and the visitor's current geographic location.[5] "Sunshine profiles act like name tags for a person in different applications, and they all tie back to individual users in Zendesk. This way, information about who the customer is and what they're doing in other applications is associated with a Zendesk user."[6] "In the Zendesk Agent Workspace, customer context also includes Pages viewed (also called visitor path), which displays the 20 most-recent web pages, app screens, or help center articles viewed by the requester. Tracking begins when an end user first lands on any page with a Web Widget or mobile SDK embedded in it, and only pages with a widget or SDK embedded are recorded. The list is updated in

---

[3] *See* See https://docs.smooch.io/guide/receiving-messages/ (last accessed April 2023).

[4] https://docs.smooch.io/guide/managing-user-information/ (last accessed April 2023).

[5] *Id.*

[6] https://support.zendesk.com/hc/en-us/articles/4408828431258 (last accessed April 2023).

real time – it shows what the requester is currently viewing, and updates if they move to another page, screen, or article."[7]   These are but a few examples of how Zendesk used and uses Plaintiff's and class members' conversations with Defendant that it intercepted in real time without Plaintiff's and class members' consent.

18.   In addition, Zendesk utilizes a number of cookies to record a Website visitor's activity during and after the visitor's chat sessions with Defendant and to link to a current chat the transcripts of previously intercepted chats between the visitor and Defendant.[8]

19.   These are but a few examples of how Zendesk used and uses Plaintiff's and class members' conversations with Defendant that it intercepted in real time without Plaintiff's and class members' consent.

20.   Zendesk's exploitation, modernization, use of, and interaction with the data it gathers through the chat feature in real time makes it more than a mere "extension" of Defendant.

21.   Given the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the Website's chat feature.   Visitors would be shocked and appalled to know that Defendant secretly records those conversations and allows a third party to secretly eavesdrop on these recorded conversations in real time under the guise of "data analytics." Visitors would also be shocked to learn that Defendant allows a third party to interpret, analyze, and also use these intercepted conversations for that third party's own uses and business purposes.

---

[7]https://support.zendesk.com/hc/en-us/articles/4408829170458-#topic_ycf_dpz_vkb (last accessed April 2023).

[8]https://support.zendesk.com/hc/en-us/articles/4408824378650-Zendesk-In-Product-Cookie-Policy (last accessed May 2023).

*Jones v. Ergatta, Inc.*
CLASS ACTION COMPLAINT

22.     Defendant's conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

23.     Within the statute of limitations period, Plaintiff visited the Website. Plaintiff and the class members used smart phones (cellular telephones with integrated computers to enable web browsing) and/or wifi-enabled tablets and laptops that use a combination of cellular and landline telephony and engaged with the "chat" feature of the Website to communicate with Defendant.  As such, class member conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA.

24.     By definition, Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony.[9]

25.     Defendant did not inform Class Members that Defendant was secretly recording their chat conversations or allowing, aiding, and abetting Zendesk to intercept and eavesdrop on them in real time.

26.     Defendant did not inform Class Members that Defendant was allowing, aiding, or abetting Zendesk to read, attempt to read or to learn the contents or meaning of Class Members' chat conversations on the Website in real time while those conversations were being sent from or received in California.

27.     Defendant did not inform Class Members that Defendant was allowing, aiding, or abetting Zendesk to use or attempt to use or to communicate information

---

[9] *See* https://www.britannica.com/technology/Internet, *"The Internet works through a series of networks that connect devices around the world through telephone lines"* (last downloaded February 2023).

previously obtained from Class Members' chat conversations on the Website—let alone to exploit that information for financial gain.

28.     Defendant did not obtain Class Members' express or implied consent to wiretap or allow Zendesk to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly recording them and allowing third parties to eavesdrop on them.

29.     Indeed, on information and belief, Defendant knew that being truthful and transparent about their conduct may dissuade people from using the chat feature of the Website—and thereby deprive Defendant of those persons' valuable data that Defendant sought to secretly and sophisticatedly exploit.

## CLASS ALLEGATIONS

30.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on the Website, and (2) whose communications were recorded and/or eavesdropped upon in real time by Zendesk or any other third party without prior consent.

31.     Excluded from the Class are Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

32.     NUMEROSITY: Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiff believes that there are hundreds of thousands of members of the Class widely dispersed throughout the United States. Class members can be identified from Defendant's records.

33.   <u>COMMONALITY:</u> Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Class include:

a.   Whether Defendant caused electronic communications from Class Members with the Website to be recorded, intercepted, and/or monitored;

b.   Whether Defendant aided and abetted a third party in eavesdropping on such communications in real time;

c.   Whether Class Members consented to Defendant's disclosure of their private conversations to third parties in the manner required by CIPA [Cal. Penal Code § 631(a)];

d.   Whether any Third Party read or attempted to read or to learn the contents or meaning of Class Members' chat conversations on the Website in real time while those conversations were being sent from or received in California;

e.   Whether any Third Party used or attempted to use or to communicate information that was previously intercepted from Class Members' chat conversations;

f.   Whether the Class is entitled to damages as a result of Defendant's conduct.

34.   <u>TYPICALITY:</u> As persons who visited the Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

35.   <u>ADEQUACY:</u> Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented

by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

36.    <u>SUPERIORITY</u>: Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**

**Aiding and Abetting Violations of the California Invasion of Privacy Act**
**Cal. Penal Code § 631(a), Clause Four**

37.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

38.    Section 631(a) of California's Penal Code imposes liability upon any entity who "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "**willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within**

**this state**" or (3) "**uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained**[.]" Clause Two is often referred to as "interception," and Clause Three as "use."

39.    Section 631(a) also imposes liability upon any entity "**who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section**".

40.    Here, Defendant aids and abets Zendesk to commit both unlawful interception and unlawful use under Section 631(a), surreptitiously and as a matter of course.

41.    Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with the Website.    "Though written in terms of wiretapping, Section 631(a) applies to Internet communications.  *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

42.    Zendesk's software embedded on the Website to intercept, eavesdrop upon, and record Plaintiff's and the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

43.    At all relevant times, Defendant intentionally caused the internet communications between Plaintiff and Class Members on the one hand and Defendant's Website on the other hand to be intercepted, eavesdropped upon, and recorded by Zendesk by using its software embedded into the Website.  Defendant paid Zendesk for its services to do exactly that, and more.

44.    By its use of Zendesk's software, Defendant aided and abetted Zendesk to intercept and eavesdrop upon such conversations in real time while those conversations were being sent from or received in California.

45.     By its use of Zendesk's software, Defendant aided and abetted at least one third party to read, attempt to read or to learn the contents or meaning of Plaintiff's and Class Members' chat conversations on the Website in real time while those conversations were being sent from or received in California.

46.     By its use of Zendesk's software, Defendant aided and abetted Zendesk to use or attempt to use or to communicate information previously intercepted from Plaintiff's and Class Members' chat conversations on the Website while those conversations were being sent from or received in California.

47.     Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

48.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class Members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

49.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

50.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

51.     Plaintiff and the class members communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

52.     Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

53.     As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

54.     As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

### THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL")**

55.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

56.     Defendant's conduct set forth above in unlawful and in violation of CIPA and its implementing regulations. As such, Defendant has violated the Unfair Competition Law's "unlawful" prong with respect to the California Class members.

57.     Defendant's conduct violated Cal. Penal Code § 631 and thus violated the UCL's unlawful prong.

58.     Defendant's conduct also invaded the privacy of the Plaintiff and Class Members and was therefore unlawful and unfair.

59.     Defendant should be enjoined from making such additional invasions of privacy.

60.     Defendant should also be ordered to secure prior express consent before any further wiretapping of electronic communication.

61.     Defendant should also be required to pay reasonable costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Invasion of Privacy Under California's Constitution

62.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63.     Californians have a constitutional right to privacy. Moreover, the California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent and specific protections of the CIPA. In addition, California's explicit constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part specifically to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy. Thus, we believe that California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 630.

64.     Plaintiff and other members of the Class have an interest in conducting personal activities (such as visiting websites), without observation or interference, including visiting websites and communicating without being subjected to secret wiretaps.

65.     Defendant intentionally invaded the privacy rights of Plaintiff and other members of the Class, and worked cooperatively with a third party to do so.

66.     This invasion of privacy is serious in nature and scope and constitutes a breach of social norms in the digital age.

67.     Thus, Plaintiff seeks all relief available for invasion of privacy under the California Constitution on behalf of herself and members of the alleged Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

B. An order declaring Defendant's conduct violates CIPA;

C. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

D. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

E. An order awarding damages, including statutory damages where appliable, to Plaintiff and the Class in amount to be determined at trial;

F. An Order awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G. An Order awarding Plaintiff and the Class pre-judgment and post-judgment interest, to the extent allowable; and

H. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury on all issues so triable.

DATED: May 26, 2023                     Respectfully Submitted,
                                        /s/ *Kas L. Gallucci*
                                          Kas L. Gallucci

                                        **LAW OFFICES OF**
                                        **RONALD A. MARRON**
                                        RONALD A. MARRON
                                        *ron@consumersadvocates.com*
                                        ALEXIS M. WOOD
                                        *alexis@consumersadvocates.com*
                                        KAS L. GALLUCCI
                                        *kas@consumersadvocates.com*
                                        651 Arroyo Drive
                                        San Diego, California 92103

15

Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
BRANDON M. WISE
(IL Bar # 6319580)*
*bwise@peifferwolf.com*
818 Lafayette Ave.
Floor 2
St. Louis, MO 63104
Tel: (314) 833-4825

ANDREW R. TATE
(GA Bar # 518068)*
*atate@peifferwolf.com*
235 Peachtree Street NE
Suite 400
Atlanta, GA 30303
Tel: (404) 282-4806

*\*(pro hac vice forthcoming)*

***Counsel for Plaintiff and
the Proposed Class***

16